UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVE THOMPSON AND SHANNON THOMPSON<br><br>Plaintiffs,<br>v.<br><br>SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, THE HONORABLE DENINE J. GUY, ROBERT PEREZ, AND MARDELL PEREZ,<br><br>Defendants. | Case No.: 12-CV-03894-LHK<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

Before the Court are the Motions to Dismiss the Complaint of Plaintiffs Steve Thompson ("Mr. Thompson") and Shannon Thompson's ("Ms. Thompson") (collectively, "Plaintiffs") Complaint filed by Defendants Santa Cruz County Human Services Department ("Department"); Santa Cruz County Superior Court Judge Denine J. Guy ("Judge Guy"); and Robert Perez ("R. Perez") and Mardell Perez ("M. Perez") (collectively, "Perez Defendants"). *See* ECF Nos. 28, 29, 47. A hearing on the three motions was held on April 18, 2013. Having considered the parties' submissions, the relevant case law, and the parties' arguments at the April 18, 2013 hearing, the Court GRANTS the Department's, Judge Guy's, and the Perez Defendants' Motions to Dismiss without leave to amend.

## I. FACTUAL BACKGROUND

This action finds its roots in certain state court proceedings before the Juvenile Division of the Santa Cruz County Superior Court ("Juvenile Court") involving Plaintiffs two children, M.T. and A.T. M.T. is Mr. Thompson's child. Compl. at 13 n.10, Ex. 6 at 6. A.T. is the child of both Plaintiffs. *Id.* The Perez Defendants are A.T.'s maternal grandparents. *Id.* ¶ 6.

While the Court will not attempt to collect or recount the extensive factual record in this case, it appears that in approximately May 2010, the Juvenile Court ordered that M.T. and A.T. be removed from Plaintiffs' home and placed in foster care. *Id.* ¶¶ 29, 31. The removal followed allegations from the Department that Plaintiffs were using drugs and that the family was living in unsanitary conditions. *Id.* ¶ 26.[1] In June 2010, Judge Guy determined that the children should remain in foster care to ensure their safety. *See id.* ¶¶ 33-34. Over the course of the next eight months, Plaintiffs made efforts to regain custody of their children including attending drug treatment programs, *see id.* ¶¶ 36, 51, 54, seeking mental health treatment, *see id.* ¶ 48, participating in reunification services, *see id.* ¶¶ 41, 42, and attending parenting classes, *see id.* ¶ 52.

Plaintiffs allege that, in approximately February 2011, "[t]he social worker… recommend[ed] [that] services to both parents be terminated." *See id.* ¶ 79. While the Complaint is not entirely clear regarding the events leading up to this recommendation, it appears that: (1) Mr. Thompson had issues keeping appointments to visit the children, *see id.* ¶¶ 58-59, (2) Plaintiffs may have failed to fully comply with a requirement imposed by the social worker that Mr. Thompson move from the home, *see id.* ¶¶ 60, 78, and (3) Ms. Thompson was evicted from her apartment, *see id.* ¶ 78. On February 2, 2011, Judge Guy ordered that M.T. and A.T. be placed with the Perez Defendants. *See id.* ¶¶ 80-81.

Following the February 2, 2011 hearing, Plaintiffs continued to interact with the Department and its social workers. *See e.g. id.* ¶¶ 85-91. During these interactions, Plaintiffs voiced concerns about the children's safety with the Perez Defendants. *See id.* ¶ 91. Additionally, in July 2011, each Plaintiff submitted a petition under California Welfare and Institutions Code

---

[1] The Court understands that Plaintiffs contest these allegations. *See e.g.* Compl. ¶¶ 10, 25. The Court expresses no opinion on the validity of the Department's allegations.

1  Section 388[2] requesting that Judge Guy give further consideration to whether it would be

2  appropriate to return the children to Plaintiffs' care. *See id.*, Exs. 12, 13. Judge Guy denied these

3  two petitions without a hearing. *See id.* ¶ 99; *In re M.T.*, H037575, 2012 WL 2377853, at *2 (Cal.

4  Ct. App. June 25, 2012), review denied (Oct. 10, 2012) (stating that the Juvenile Court summarily

5  dismissed Mr. Thompson's July 2011 "petition without a hearing, ruling that it not did state new

6  evidence or allege facts that, if true, would show a change in circumstances" and further "ruled that

7  granting the petition would not promote the minors' best interests."). Plaintiffs allege that Ms.

8  Thompson filed a third petition under Section 388 on October 13, 2011. *See id.* ¶ 104.[3] Judge Guy

9  heard this petition on October 24, 2011, and denied it. *See id.* ¶ 107.

10  On November 2, 2011, Judge Guy terminated Plaintiffs' parental rights and recommended

11  that the Perez Defendants be permitted to adopt the children. *See id.* ¶¶ 95, 111. On November 9,

12  2011, Plaintiffs appealed the termination to the California Court of Appeal. *See* Compl. ¶ 112; *In*

13  *re M.T.*, 2012 WL 2377853. On June 25, 2012, the Court of Appeal affirmed the termination. *In*

14  *re M.T.*, 2012 WL 2377853 at *5.

15  Plaintiffs filed the Complaint in this action on July 25, 2012. Plaintiffs petitioned the

16  California Supreme Court for review of the Court of Appeal's affirmance on August 9, 2012. *See*

17  Department Opp. at 6. In October 2012, the California Supreme Court denied Plaintiff's request

18  for review. *See id.* (Westlaw online history stating that review was denied October 10, 2012);

19  Department Opp. at 6, 8 (stating that the petition was denied on October 9, 2012).

20  At the April 18, 2013 hearing, Plaintiffs stated that they have not appealed the decision to

21  the Supreme Court of the United States. The time for such an appeal expired on January 8, 2013.

22  *See* 28 U.S.C.A. § 2101 (providing that appeals must "be taken or applied for within ninety days").

---

[2] California Welfare and Institutions Code Section 388 provides that: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or a nonminor dependent as defined in subdivision (v) of Section 11400, or the child himself or herself or the nonminor dependent through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."
[3] This Petition does not appear to be attached to the Complaint.

3
Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

## II.     PROCEDURAL BACKGROUND

In the Complaint, Plaintiffs allege that Judge Guy committed various errors in the course of the Juvenile Court proceedings. *See e.g.* Compl. at 40, § (h) (alleging that the "Juvenile Court… denied… Plaintiffs a fair trial"). Plaintiffs appear to allege claims against Judge Guy based on 42 U.S.C. Sections 1983, 1985, and 1986. *See* Compl. at 2 (setting forth allegations regarding "Jurisdiction"). Plaintiffs also allege that the Department and the Perez Defendants are liable under these statutes for their involvement in certain alleged misconduct in connection with Plaintiffs' custody proceedings. *See e.g. id.* ¶ 132 (alleging that the Plaintiffs "expressed concern regarding the inflexibility of the service providers[]… and [the] inflexible schedule" but the Department social worker "refused to listen"); *id.* ¶ 116 (alleging that R. Perez "maliciously conspired against the Plaintiffs in order to deprive them of fundamental rights"). Plaintiffs request as relief: (1) an "injuncti[on]… reversing the termination of parental rights and [an] order [that] the children… be reunited with their parents"; (2) "a Stay of Execution… regarding any further permanency or adoption hearings the Juvenile Court has scheduled"; and (3) $10 million in damages. *Id.* ¶ 157.[4]

On November 16, 2012, the Department filed its Motion to Dismiss. ECF No. 28 ("Department Mot."). On November 20, 2012, Judge Guy filed her Motion to Dismiss. ECF No. 29 ("Guy Mot."). On November 30, 2012, Plaintiffs filed their Opposition to the Department's Motion to Dismiss. ECF No. 33 ("Department Opp."). On December 4, 2012, Plaintiffs filed their Opposition to Judge Guy's Motion to Dismiss. ECF No. 34 ("Guy Opp."). The Department and Judge Guy filed their Replies in support of their respective Motions to Dismiss on December 11, 2012. ECF No. 36 ("Guy Reply"); ECF No. 37 ("Department Reply").

The Perez Defendants filed their Motion to Dismiss on January 23, 2013. ECF No. 47 ("Perez Mot."). Plaintiffs responded to the Perez Defendants' Motion to Dismiss on February 6, 2013. ECF No. 48 ("Perez Opp."). The Perez Defendants did not file a Reply in support of their Motion to Dismiss.

---

[4] There are two consecutive paragraphs labeled Paragraph 157. The Court refers to the latter.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101–02 (1998). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010).

### B. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

5

Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Nonetheless, the court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## IV.   ANALYSIS

### A.   Summary of Defendants' Arguments

As set forth *supra*, Judge Guy, the Department, and the Perez Defendants have filed Motions to Dismiss. Judge Guy moves to dismiss Plaintiffs' claims against her on five grounds. First, Judge Guy argues that the Court lacks subject matter jurisdiction because Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine. *See* Guy Mot. at 5. Second, Judge Guy argues that she is immune from Plaintiffs' suit. *See id.* at 7. Third, Judge Guy argues that Plaintiffs' claims are barred under the doctrine of *res judicata*. *See id.* at 9. Fourth, Judge Guy argues that this Court should abstain from this case under *Younger v. Harris*, 401 U.S. 37 (1971). *See id.* at 12-13. Finally, Judge Guy argues that Plaintiffs have failed to state a claim. *See id.* at 14.

The Department moves to dismiss Plaintiffs' claims against it on the grounds that the Court is barred under the *Rooker-Feldman* doctrine from exercising subject matter jurisdiction over Plaintiffs' claims. *See* Department Mot. at 4. The Department also argues that Plaintiffs' allegations fail to state a claim as to the Department. *See id.* at 5. The Department additionally contends that Plaintiffs' claims against the Department are barred because the Department's social

workers were performing quasi-prosecutorial functions, and, accordingly, are immune from suit. *See id.* at 6.

The Perez Defendants argue that: (1) Plaintiffs' Complaint should be dismissed under the *Rooker-Feldman* doctrine, s*ee* Perez Mot. at 3; (2) Plaintiffs' allegations fail to state a claim, *see id.*; and (3) as a "mandated reporter" under California law, R. Perez is entitled to immunity under California Penal Code Section 1172(a), *see id.* at 5.

The Court finds that, pursuant to the *Rooker-Feldman* doctrine, the Court may not exercise jurisdiction over Plaintiffs' claims against any of the Defendants. Furthermore, the Court finds that, even if the *Rooker-Feldman* doctrine did not apply, Plaintiffs' claims against Judge Guy must be dismissed because she is entitled to judicial immunity. The Court addresses each of these issues in turn.[5]

### B. *Rooker-Feldman* Doctrine

#### 1. Background on *Rooker-Feldman* Doctrine

"The *Rooker–Feldman*[6] doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal" and also "the 'de facto equivalent' of such an appeal." *Id.* (*Noel v. Hall,* 341 F.3d 1148, 1155 (9th Cir.2003)). "The purpose of the doctrine is to protect state judgments from collateral federal attack." *Doe & Assocs. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir. 2001). The *Rooker-Feldman* doctrine applies where a party is: "[1] assert[ing] as her injury legal error or errors by the state court *and* [2] seek[ing] as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (citing *Noel*, 341 F.3d at 1164) (emphasis in original).

---

[5] In light of these conclusions, the Court need not resolve Judge Guy's arguments regarding: (1) *Younger* abstention, or (2) *res judicata*. The Court also need not resolve all Defendants' arguments that Plaintiffs' allegations fail to state a plausible claim for relief or the immunity arguments of the Department and the Perez Defendants.

[6] The *Rooker–Feldman* doctrine derives its name from two United States Supreme Court cases: (1) *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), and (2) *Rooker v. Fidelity Trust Company,* 263 U.S. 413 (1923).

7
Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

If a plaintiff is "bring[ing] a forbidden de facto appeal" such that the *Rooker-Feldman* doctrine applies, the doctrine will not only prohibit the Plaintiff from litigating the de facto appeal, but also any issue that is "inextricably intertwined" with the state court's judgment. *Cooper*, 704 F.3d at 778-79. The "inextricably intertwined" test is *only* applied if the Court has already determined that *Rooker-Feldman* applies because the plaintiff is seeking a prohibited de facto appeal. *See id.* at 778 (citing *Noel*, 341 F.3d at 1158). A claim is "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it," *i.e.* "[w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)); *see also Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (providing that claims are "'inextricably intertwined' with the state court's decision" if "the adjudication of… [such] claims would undercut the state ruling").

Having set forth the legal standards relating to *Rooker-Feldman* doctrine, the Court considers whether the doctrine precludes the claims against Judge Guy, the Department, and the Perez Defendants.

### 2. *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims Against Defendants
#### a. Plaintiffs' Claims Against Judge Guy are Barred

As an initial matter, the Court finds that the *Rooker-Feldman* doctrine applies in this case and precludes Plaintiff's claims against Judge Guy. As set forth above, the *Rooker-Feldman* doctrine applies where a party is: "[1] assert[ing] as her injury legal error or errors by the state court *and* [2] seek[ing] as her remedy relief from the state court judgment." *Kougasian*, 359 F.3d at 1140. Plaintiffs' claims against Judge Guy meet both requirements.

First, the Court finds that Plaintiffs are asserting as a basis for relief "legal error or errors" by Judge Guy in the course of the Juvenile Court proceedings. *Kougasian*, 359 F.3d at 1140. For example, Plaintiffs allege that the "Juvenile Court" (which the Court interprets to mean Judge Guy): (1) "denied… Plaintiffs a fair trial," *id.* at 40(h); (2) "had knowledge of evidence which was absent from the Departments reports [but] refused to have all evidence present prior to making her orders," *id.* ¶ 142; (3) "showed biasness and prejudice towards" Plaintiffs, *id.* at 42(i); (4) based its

8

1   decision on reports of domestic violence from M. Perez even though this "evidence was only

2   hearsay and not sufficient to be used against" Plaintiffs, *id.* ¶ 147; (5) determined that "the children

3   were medically neglected" even though there "was not… sufficient evidence" to support such a

4   determination, *id.* ¶ 146; (6) falsely "labeled the parents as '[c]hronic drug abusers' and determined

5   the parents would never be able to provide the type of life children need in order to be happy," *id.* ¶

6   151. Because Plaintiffs "assert[] as [their] injury legal error or errors by the state court," the first

7   *Kougasian* requirement is met. *Id.*, 359 F.3d at 1140.

8         Second, Plaintiffs are "seek[ing] as [their] remedy relief from the state court judgment."

9   *Kougasian*, 359 F.3d at 1140; *Cooper*, 704 F.3d at 777-78 ("To determine whether an action

10  functions as a de facto appeal, we 'pay close attention to the *relief* sought by the federal-court

11  plaintiff.'") (citing *Bianchi,* 334 F.3d at 900). While Plaintiffs' Complaint includes a request for

12  $10 million in damages against all Defendants, Plaintiffs' first request for relief is an

13  "injuncti[on]… reversing the termination of parental rights and [an] order [that] the children… be

14  reunited with their parents…" Compl. ¶ 157. Thus, the second *Kougasian* requirement is met.

15  Consequently, the Court concludes that Plaintiffs are seeking a de facto appeal such that the

16  *Rooker-Feldman* doctrine applies. Because Plaintiffs' claims against Judge Guy assert various

17  errors committed by her in the State Court proceedings, the Court cannot exercise jurisdiction over

18  these claims.

### b. The *Rooker-Feldman* Doctrine Also Bars Plaintiffs' Claims Against the Department and the Perez Defendants

20        The *Rooker-Feldman* doctrine also precludes the Court from exercising jurisdiction over

21  Plaintiffs' claims against the Department and the Perez Defendants.

22        As set forth *supra*, because the Court has concluded that *Rooker-Feldman* applies, the

23  Court must decline to exercise jurisdiction over any claim that is "inextricably intertwined" with

24  Judge Guy's decision in the Juvenile Court proceedings. *Cooper*, 704 F.3d at 779. A claim is

25  "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the

26  extent that the state court wrongly decided the issues before it." *Id*. A claim alleging misconduct

27  by a third party may be "inextricably intertwined" if the allegations of misconduct were previously

9

Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

considered by the state court judge in reaching her decision in a particular case. For example, in *Cooper*, the Ninth Circuit held that the plaintiff's claims that a prosecutor, senior criminalist, and other public officials had "conspired to tamper with and falsify evidence" were "inextricably intertwined" with the state court's judgment in the plaintiff's case because the state court had "found that similar and, in some instances, identical allegations insufficient." 704 F.3d at 782.

        **i.**        **The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims that the Department Failed to Provide Adeqaute Reunification Services and that its Recommendations Were Not Supported by Sufficient Evidence**

Here, Plaintiffs allege that the Department and the Perez Defendants are liable for a range of misconduct in connection with the Juvenile Court proceedings. These claims are inextricably intertwined because the issues raised and conduct alleged in these claims was considered by Judge Guy in reaching her conclusions during the Juvenile Court proceedings.

As an initial matter, a number of Plaintiffs' allegations appear to challenge the adequacy and termination of the reunification services offered to Plaintiffs by the Department. *See e.g.* Compl. at 34, § (f) (alleging that the Department "failed to provide the Plaintiffs with services designed to reunify" Plaintiffs with their "children in a timely fashion"); *id.* ¶ 132 (alleging that Plaintiffs "expressed concern regarding the inflexibility of their service providers[] and… the inflexible schedule" but the social worker "refused to listen"); *id.* ¶ 134 (alleging that the Department "recommended services [to Ms. Thompson] be terminated after they learned of an eviction and of Mr. Thompson['s] presence in the home"). Judge Guy would have been required to consider whether the reunification services offered to Plaintiffs were sufficient in making her determinations to terminate Plaintiffs' parental rights and to place the children with the Perez Defendants. *See Grimes v. Alameda Cnty. Soc. Servs.*, C 11-02977 WHA, 2011 WL 4948879, at *2 (N.D. Cal. Oct. 18, 2011) (recognizing that "[i]n California, termination of parental rights is carried out by order of a state juvenile court after specific factual findings are made, including a finding that reasonable reunification services were provided") (citing Cal. Welf. & Inst. Code § 366.26; *Angela S. v. Superior Court of Mendocino Cnty.,* 36 Cal.App.4th 758, 762 (1995)). Thus, a finding in Plaintiffs' favor would require a determination that Judge Guy "wrongly decided the

10
Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

issues before" her. *Cooper*, 704 F.3d 779. These claims are therefore "inextricably intertwined" with Judge Guy's decision, and the Court may not exercise jurisdiction over them. *Id.*; *see also Grimes*, 2011 WL 4948879 at *2 (holding that "plaintiff's claims regarding the termination of his parental rights, the fairness of his reunification services, and the removal of his children from his home would require [the Court to] review[] the state juvenile court's decisions" and, accordingly, such claims were inextricably intertwined).

Plaintiffs' allegations also appear to challenge the adequacy of the evidence supporting the Department's recommendations in this matter, including its recommendations that Plaintiff's parental rights be terminated and that the Perez Defendants be permitted to adopt the children. *See e.g. id.* ¶ 133 (alleging that the social worker "petitioned the [Juvenile Court] with minimal evidence"); *id.* ¶ 137 (alleging that the Department "failed to have [M. Perez] provide a physical in order to assess her disabilities"). Judge Guy would have been required to consider the adequacy of the evidence supporting the Department's recommendations in making her determinations during the Juvenile Court proceedings. Thus, these claims are inextricably intertwined as well. *Cooper*, 704 F.3d 779.

### ii. The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims that the Department and the Perez Defendants Engaged in Fraudulent Conduct

Finally, Plaintiffs appear to allege that the Department and the Perez Defendants engaged in conduct which might be characterized as fraudulent or illegal. *See e.g.* Compl. ¶ 124, *id.* at 30, § (D) (alleging that the Department's reports to the Juvenile Court deliberately omitted "accounts of [Plaintiffs'] attempts… to address the social worker['s] concern[s]" in order to give the Juvenile Court a "false" impression of Plaintiffs) ; *id.* ¶ 116 (alleging that R. Perez informed "multiple medical providers of [false]… events in order to [obtain]… false diagnos[es] [from the]… providers"); *id.* ¶¶ 113, 117 (alleging that R. Perez and M. Perez falsely claimed to "have knowledge of a methamphetamine laboratory in… [Plaintiffs'] bedrooms").

Notably, in *Kougasian*, the Ninth Circuit held that *Rooker-Feldman* doctrine did not apply where plaintiff sought relief from a state court judgment based on extrinsic fraud by her adversaries in those proceedings. *Id.*, 359 F.3d at 1140. The court reasoned that "[e]xtrinsic fraud on a court

11
Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1 is, by definition, not an error by [the state] court." *Id*. at 1141. Similarly in *Noel*, the Court held

2 that the *Rooker-Feldman* doctrine did not bar the plaintiff's claims alleging that his adversaries in

3 the state court proceedings illegally wire-tapped him because the "plaintiff assert[ed] as a legal

4 wrong an allegedly illegal act or omission by an adverse party." *Id.* 341 F.3d at 1164.

5   *Kougasian* and *Noel* do not persuade the Court that it may exercise jurisdiction over

6 Plaintiffs' claims. Both cases are distinguishable in that, in those cases, the Plaintiffs did not (in

7 addition to seeking relief based on misconduct by an adversary) seek relief based on errors by the

8 state court. *Kougasian*, 359 F.3d at 1140; *Noel*, 341 F.3d at 1166. Accordingly, the *Rooker-*

9 *Feldman* doctrine was wholly inapplicable. *See Kougasian*, 359 F.3d at 1140 (holding that the

10 *Rooker-Feldman* doctrine was not applicable because plaintiff did not assert "that she had been

11 harmed by legal errors made by the state courts"). Because the doctrine did not apply, the

12 *Kougasian* and *Noel* Courts were not required to resolve whether the illegal acts and extrinsic fraud

13 at issue were inextricably intertwined with the state court's judgment. *See id.* at 1141, 1143

14 (holding that the *Rooker-Feldman* doctrine did not apply to Plaintiff's claims seeking to set aside

15 the state court judgment based on extrinsic fraud because such fraud was not an error by the state

16 court, and that, "[b]ecause [plaintiff] [was] not bringing a forbidden de facto appeal, there [were]

17 no issues with which the" "other alleged wrongful acts" in the complaint could be "'inextricably

18 intertwined' within the meaning of *Rooker-Feldman*."); *Noel*, 341 F.3d at 1166 (holding that, while

19 "[t]he claims Noel sought to litigate in federal district court were clearly related to claims that had

20 gone to judgment in the earlier state court litigation…. [b]ecause Noel [had] not brought a

21 forbidden de facto appeal from any of the earlier state court judgments, the 'inextricably

22 intertwined' analysis of *Feldman* [did] not apply.").

23   In contrast, as set forth above, the *Rooker-Feldman* doctrine does apply in this case because

24 Plaintiffs are asserting legal errors by the Juvenile Court *and* seeking relief from its judgment.

25 Where *Rooker-Feldman* applies, federal courts are required to decline to exercise jurisdiction over

26 any claim that is inextricably intertwined with the state court's judgment, even if those claims

27 allege misconduct by an adversary. *See Cooper*, 704 F.3d at 782 (analyzing whether plaintiff's

28 claims that prosecutor, senior criminalist, and other public officials "conspired to tamper with and

falsify evidence" were "inextricably intertwined" with the state court's judgment where Plaintiff also alleged legal errors by state court). Here, as will be set forth below, Plaintiffs' allegations of fraud and other misconduct are inextricably intertwined with Judge Guy's decision because Plaintiffs raised these allegations several times with Judge Guy before Judge Guy terminated Plaintiffs' parental rights. *See id.* (holding that plaintiff's claims that officials "conspired to tamper with and falsify evidence" were "inextricably intertwined" with the state court's judgment because the state court had "found that similar and, in some instances, identical allegations insufficient").

Specifically, at the April 18, 2013 hearing on the Motions to Dismiss, Plaintiffs represented that the Complaint's allegations of wrongdoing by the Department and the Perez Defendants were presented to Judge Guy in the context of Plaintiffs' two July 2011 petitions[7] seeking relief, under California Welfare and Institutions Code Section 388, based on changed circumstances. *See* Transcript of April 18, 2013 Hearing ("Tr.") at 35:24-36:5 ("The Court: A Petition of Changed Circumstances in which you laid out all of the false evidence that the social worker and the Perezes had supplied to the Court? Ms. Thompson: That's correct, yes. The Court: Okay. And you included everything in there? Ms. Thompson: Yes.").[8] Indeed, a review of Plaintiffs' petitions confirms that, while perhaps lacking some of the specific allegations of misconduct set forth in the Complaint, the petitions allege that both the Department and the Perez Defendants engaged in fraud and other wrongdoing designed to deprive Plaintiffs of custody of their children. *See* Compl., Ex. 12 ("Mr. Thomp. Pet."); *id.*, Ex. 13 ("Ms. Thomp. Pet.") (collectively, "Section 388 Petitions").[9] Furthermore, Plaintiffs stated at the April 18, 2013 hearing that they were given an

---

[7] Plaintiffs allege that Ms. Thompson submitted a third petition on October 13, 2011, which was denied by Judge Guy at a hearing on October 24, 2011. Compl. ¶¶ 104, 107. This petition does not appear to be attached to the Complaint.
[8] The Court notes that Plaintiffs stated that Judge Guy declined to hold a hearing in connection with Plaintiffs' Section 388 Petitions purportedly because Plaintiffs filed the Petitions without first "discuss[ing] it with [Plaintiffs'] attorneys." Tr. at 36:9-16. Nevertheless, Plaintiffs stated that it is their understanding that Judge Guy reviewed the Petitions. *See id.* at 36:23-24 ("The Court: But she had reviewed it? Ms. Thompson: To our knowledge, I believe so, yes."). The Court also notes that the Court of Appeal decision in Plaintiff's case indicates the Petitions were given substantive consideration. *In re M.T.*, 2012 WL 2377853 at *2 (stating that the Juvenile Court summarily dismissed Mr. Thompson's July 2011 "petition without a hearing, ruling that it not did state new evidence or allege facts that, if true, would show a change in circumstances" and further "ruled that granting the petition would not promote the minors' best interests.").
[9] *Compare e.g.* Mr. Thomp. Pet. at 2, 4 (alleging that "Santa Cruz County Social Workers mainpulat[ed] evidence" and that the County deliberately omitted from the record "numerous

13

Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    additional opportunity to discuss their concerns about the Department and the Perez Defendants at

2    the November 2, 2011 hearing before Judge Guy.  Tr. at 38:11-39:24 (stating that at the November

3    2011 hearing, Plaintiff raised issues concerning an incident in which M. Perez physically abused

4    Ms. Thompson); *id.* at 40:1-13 ("Mr. Thompson: [At the November 2, 2011 hearing, Judge Guy]…

5    asked … if we had anything to add… and she gave us a brief moment to speak and that's when we

6    took that opportunity to state other… issues with her… [However Judge Guy said] I've already

7    made my decision.  I'm not going to hear any more of this.  The Court: And that's when you raised

8    some of the issues that were in your Petition of Changed Circumstances?  Mr. Thompson: Yes.

9    The Court: Okay.  Did you raise all of the issues… at that time… Mr. Thompson: We tried to.").

10   Thus, it appears that Judge Guy's decision to terminate Plaintiffs' parental rights took into

11   consideration much of the fraudulent and illegal conduct alleged in the Complaint.  Consequently,

12   a ruling in Plaintiffs' favor would, at a minimum, "undercut the state ruling," *Bianchi*, 334 F.3d at

13   898, and would more than likely require a finding that "the state court [was] wrong[]" in

14   terminating Plaitniffs' custodial rights, *Cooper*, 704 F.3d at 779.  Plaintiffs' claims of fraud and

15   wrongdoing on the part of the Perez Defendants and the Department are therefore inextricably

16   intertwined with Judge Guy's decision.  *See id.* (holding that plaintiff's claims that prosecutor,

17   "senior criminalist," and "other public officials conspired to tamper with and falsify evidence"

---

documents" showing that "Mr. Thompson" successful[ly] complet[ed]… services") *and* Ms. Thomp. Pet. at 5 (alleging that the Department "conceal[ed] facts and with[held] evidence… [thereby] perpetrating a fraud upon the [Juvenile] [C]ourt") *with* Compl. at 30 (alleging that the Department deliberately omitted "accounts of [Plaintiffs'] attempts… to address the social worker['s] concern[s]" in order to give the Juvenile Court a "false" impression of Plaintiffs."); *compare* Mr. Thomp. Pet. at 7 (alleging that the Perez Defendants made "false reports… to the [D]epartment… [to] get[] Mr. Thompson in 'trouble'") *with* Compl. at 24 (alleging that R. Perez made "false statement[s]" to the Department and falsely reported that there was "a methamphetamine laboratory in… [Plaintiffs'] bedrooms"); *compare* Mr. Thomp. Pet. at 7 (alleging that the R. Perez "showed [the social] worker a box full of materials," which the social worker brought to the detention hearing) *with* Compl. ¶ 39 (alleging that the Perez Defendants "brought… a box full of things to try and prove [Mr. Thompson's] unfitness as a parent); *compare* Mr. Thomp. Pet. at 7 (alleging that the Perez Defendants made "untrue" statements and told social workers "about Mr. Thompson's criminal history, drug use history, [and] that [Mr. Thompson] stated that he will never stop doing drugs") *with* Compl. ¶ 153 (alleging that R. Perez falsely reported that "Mr. Thompson had stated [that] he would never stop using drugs during") *and id*. ¶ 114 (alleging that R. Perez illegally "obtain[ed] Mr. Thompson['s] criminal record," which R. Perez shared with the Department in order "to exploit Mr. Thompson"); *compare* Ms. Thomp. Pet. at 6 (alleging that "the maternal grandparents have advised [A.T.'s] new pediatrician… not… [to] speak to Mrs. Thompson") *with* Compl. ¶ 116 (alleging that R. Perez advised the children's doctors "not to speak to [Plaintiffs]… regarding their children").

14
Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

were "inextricably intertwined" with the state court's judgment where the state court had "found that similar and, in some instances, identical allegations insufficient"). Accordingly, pursuant to the *Rooker-Feldman* doctrine, the Court may not exercise jurisdiction over these claims. *See id.*; *Ismail v. County of Orange*, SACV 10-00901 VBF, 2012 WL 3644170, at *16 (C.D. Cal. June 11, 2012) *report and recommendation adopted*, SACV 10-00901 VBF AJ, 2012 WL 3644155 (C.D. Cal. Aug. 23, 2012), appeal dismissed (Oct. 18, 2012) (holding that "plaintiff's claims that the social worker defendants 'colluded' with other defendants or were part of a conspiracy to deprive plaintiff of her federal rights by facilitating A. I.'s adoption by the Fords" were precluded by the *Rooker-Feldman* doctrine because they were "nothing more than an indirect collateral attack on the state court orders and judgments in her dependency case.").[10]

For the reasons set forth above, the Court concludes that, pursuant to the *Rooker-Feldman* doctrine, the Court may not exercise jurisdiction over Plaintiffs' claims. Accordingly, Plaintiffs' claims must be dismissed.

### C. Judicial Immunity

The Court also finds that, even if *Rooker-Feldman* did not apply, Plaintiffs' claims against Judge Guy must be dismissed because she is entitled to absolute judicial immunity.

---

[10] The United States Supreme Court has recognized an exception to federal jurisdiction for child custody decrees. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006) (recognizing that, under the "domestic relations" exception, "'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds"). It is not clear whether this exception is directly applicable to this case to the extent that Plaintiffs' claims are based on fraud and other torts. *Id.* (holding that the domestic relations exception is a "narrow" one and cautioning that "[w]hile… state tribunals' [have] 'special proficiency' in handling issues arising in the granting [of divorce, alimony, and child custody] decrees… federal courts [are] equally equipped to deal with complaints alleging torts"); *In re Jonas*, 10-60248-7, 2010 WL 3245517, at *4 (Bankr. D. Mont. Aug. 12, 2010) (holding the domestic relations exception provided an alternative basis, in addition to the *Rooker-Feldman* doctrine, for declining jurisdiction in case involving allegations of fraud upon divorce court, but acknowledging that the domestic relation exception's applicability was questionable given that the United States Supreme Court cases addressing the exception "viewed federal courts as equally equipped to deal with complaints alleging the commission of torts"). In the instant case, the Superior Court provided Plaintiffs drug treatment, mental health treatment, reunification services, and parenting classes. Complaint ¶¶ 36, 41, 42, 51, 52, and 54. The Superior Court also had the benefit of the expertise and services of social workers, counsel for the parents, counsel for the children, counsel for the grandparents, and Court Appointed Special Advocates for each child. Tr. at 5:10-9:16. This Court lacks the infrastructure of services and expertise to assist and evaluate the parents and their living arrangements and to assess what is in the best interest of the children.

1   "State and federal executive officials are absolutely immune from § 1983 suits if they

2   perform ''special functions' which, because of their similarity to functions that would have been

3   immune when Congress enacted § 1983, deserve absolute protection from damages liability.'"

4   *Buckwalter v. Nevada Bd. of Med. Examiners*, 678 F.3d 737, 740 (9th Cir. 2012), as amended (June

5   8, 2012) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993)). "The paradigmatic

6   functions giving rise to absolute immunity are those of judges and prosecutors." *Id.*.

7   Thus, judges "are not liable to civil actions for their judicial acts, even when such acts are in excess

8   of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v.*

9   *Sparkman*, 435 U.S. 349, 355-56 (1978). Whether an act is "a 'judicial' one relate[s] to the nature

10  of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations

11  of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362.

12  Here, as set forth above, Plaintiffs claims against Judge Guy relate to actions she took as the

13  presiding judge in the Juvenile Court proceedings. For example, Plaintiffs claim that Judge Guy:

14  (1) "denied… Plaintiffs a fair trial" (Compl. at 40, § (h)); (2) "had knowledge of evidence which

15  was absent from the Departments reports [but] refused to have all evidence present prior to making

16  her orders" (*id.* ¶ 142); and (3) "showed biasness and prejudice towards" Plaintiffs (*id.* at 42(i)).

17  The actions of which Plaintiffs complain occurred while Judge Guy was determining Plaintiffs'

18  parental rights, which "is a function normally performed by a judge." *Stump*, 435 U.S. at 362.

19  Accordingly, these acts were judicial acts, and Judge Guy may not be held liable for them. *Id.* at

20  355-56.

21  Plaintiffs, nevertheless, argue that Judge Guy should not be granted immunity for these

22  actions because Judge Guy acted: (1) "corrupt[ly]" and "maliciously violated [Plaintiffs']… rights"

23  (Guy Opp. at 7); and (2) without "any true [j]urisdiction" when she stated that Ms. Thompson

24  suffered from depression because only a psychologist could make this determination (*id.* at 14).

25  The Court is not persuaded.

26  With respect to Plaintiffs' argument that Judge Guy acted "maliciously" and "corrupt[ly]"

27  (Guy Opp. at 7), as stated above, judges are not liable for their "judicial acts, even when such

28  acts… are alleged to have been done maliciously or corruptly." *Stump*, 435 U.S. at 355-56;

16

Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

*Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (holding that judge's "immunity from civil liability should not be 'affected by the motives with which their judicial acts are performed.'") (internal citations omitted).

Moreover, as to Plaintiffs' argument that Judge Guy acted without jurisdiction in stating that Ms. Thompson suffered from depression, Plaintiffs are correct that a judge is not entitled to immunity where "he acts in the 'clear absence of all jurisdiction.'" *Ashelman*, 793 F.2d at 1075. However, "[a] clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1389 (9th Cir. 1987). Here, Judge Guy had subject matter jurisdiction over the custodial proceedings. *See In re S.W.*, 148 Cal. App. 4th 1501, 1510 (2007) (holding that juvenile court had subject matter jurisdiction in custody proceedings where mother "and… children were living in California"). Plaintiffs' argument that Judge Guy acted without jurisdiction in finding that Ms. Thompson suffered from depression is, in essence, a challenge to the sufficiency of the evidence supporting Judge Guy's statement and does not show that Judge Guy acted in the clear absence of jurisdiction. Consequently, Plaintiffs' jurisdiction argument fails.

Because the acts allegedly committed by Judge Guy occurred in her judicial capacity, and judges are entitled to absolute immunity for actions taken in their judicial capacity, the Court concludes that all Plaintiffs' claims against Judge Guy must be dismissed on this ground as well. *See Buckwalter*, 678 F.3d at 740.

## V.     LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate a decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995)). Generally, leave to amend shall be denied only if allowing

17
Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir. 2008).

As set forth above, Plaintiffs are, in essence, seeking a de facto appeal of the State Court judgment. Plaintiffs' purpose in pursuing these claims appears to be to regain custody of their children. Compl. ¶ 157 (seeking an "injuncti[on]… reversing the termination of parental rights and [an] order [that] the children… be reunited with their parents"). Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. Plaintiffs' claims against Judge Guy are also barred under principles of judicial immunity. Plaintiffs cannot amend the Complaint to overcome these obstacles. Consequently, the Court declines to grant leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Department, Judge Guy, and the Perez's Motions to Dismiss are GRANTED without leave to amend. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 23, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

18
Case No.: 12-CV-03894-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS